UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:14-cv-00028-D

MARIAN SNOW,

                Plaintiff,

     vs.

BROCK & SCOTT PLLC
TRUSTEE SERVICES OF CAROLINA LLC
JAMES P. BONNER
MATTHEW J. HERRLE
JEREMY B. WILKINS
THOMAS E. BROCK
GREGORY A. SCOTT
AARON B. ANDERSON
STEVEN GALLAGHER
MELISSA STONE
WENDI CLAWSON

           Defendants.

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FIRST
AMENDED COMPLAINT**

COME NOW Defendants, James P. Bonner, Jeremy B. Wilkins, Thomas E. Brock,

Gregory A. Scott, Aaron B. Anderson ("Attorney Movants"), as well as Stephen Gallagher

("Gallagher") and Wendi Clawson ("Clawson") (collectively "Moving Defendants"), by and

through their undersigned counsel of record, and submit this Memorandum of Law in Support of

their Motion to Dismiss Plaintiff, Marian Snow's ("Plaintiff") First Amended Complaint (the

"First Amended Complaint") for failure to state a claim upon which relief may be granted

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTORY STATEMENT

Plaintiff asserts claims for violations of the Fair Debt Collection Practices Act ("FDCPA") and the North Carolina Unfair Trade Practices Act ("NCUTPA') against the law firm of Brock & Scott, PLLC ("Brock & Scott"), Trustee Services of Carolina, LLC ("TSC"), and nine (9) individuals. Seven (7) of the individual Defendants bring this Motion to Dismiss.

Plaintiff alleges that all of the Defendants violated §1692g(b) of the FDCPA by continuing to collect a debt after she made written request for a verification[1] of it, and before the verification was provided. The basis of the motion is that under current case law interpreting §1692g(b), Plaintiff has not sufficiently alleged that six of the Moving Defendants (James P. Bonner, Jeremy B. Wilkins, Thomas E. Brock, Gregory A. Scott, Aaron B. Anderson, and Stephen Gallagher) had the requisite communication with her or involvement in the foreclosure proceeding to be liable to her for any alleged violation of the FDCPA. The seventh Moving Defendant, Wendi Clawson, is moving to be dismissed as a matter of law, because her only contact with the Plaintiff occurred *after* Plaintiff had been provided a verification of the debt at issue in this litigation.

## STATEMENT OF THE CASE

This action was instituted by Marian Snow on February 5, 2014, seeking damages arising out of a foreclosure action brought against certain real property located in Onslow County, North Carolina. Plaintiff defaulted on payments made under a loan made by Home Finance of America. First Amended Complaint ("F.A. Compl.") ¶28. The matter was referred to TSC, as Substitute Trustee, to institute foreclosure proceedings.

---

[1] Under the FDCPA, the terms "verification of a debt" and "validation of a debt" are used interchangeably.

The Complaint does not sufficiently allege that the Moving Defendants have committed acts that would constitute a violation of §1692g(b). Thus, on April 1, 2014, the Moving Defendants, with the exception of Clawson filed a Motion to Dismiss. (Dkt. Entries 14-15). Clawson, and the other Defendants to this litigation filed an answer to the Complaint on April 1. (Dkt. Entry 13). On April 21, Plaintiff filed, but has to this point not served, a First Amended Complaint against all the Defendants. (Dkt. Entry 25). After reviewing the First Amended Complaint, and for the reasons set forth below, the Defendants who moved to dismiss the original Complaint, with the addition of Wendi Clawson, seek to have all of the causes of action stated against them dismissed.

## STATEMENT OF FACTS

### A.    Request For Court To Take Judicial Notice Of 13 SP 218

In order to incorporate other essential facts in this matter not contained in the First Amended Complaint, Moving Defendants request that this Court take judicial notice of a foreclosure proceeding that was before the Clerk of Superior Court of Onslow County. The proceeding was 13 SP 218 in the Superior Court Division before the Clerk of Court, captioned *Foreclosure of Real Property Under Deed of Trust from Marian Snow-Gibbons and Timothy Gibbons, in the original amount of $299,200.00, payable to Home Finance of America, dated March 25, 2009 and recorded on March 27, 2009 in Book 3202 at Page 526, Onslow County Registry* (hereinafter "the Foreclosure"). Pursuant to Fed. R. Evid. 201(c), the Court "must take judicial notice if a party requests it" or "if the court is supplied with necessary information." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, [the Court] may properly take judicial notice of matters of public record."); *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 778 (E.D.N.C. 2011) (court

taking judicial notice of the special proceedings filings by Defendants in a non-judicial foreclosure in considering a motion to dismiss under Rule 12(b)(6).)

## B.    Execution Of Note And Deed Of Trust

Plaintiff executed a promissory note ("Note") and deed of trust ("Deed of Trust") evidencing a loan used to purchase a residence located at 4472 Island Drive, North Topsail Beach, North Carolina, 28460 (the "Property") on March 25, 2009 in the principal amount of $299,200.00 in favor of Home Finance of America.  F.A. Compl. ¶27.

## C.    Plaintiff Defaults On Her Mortgage

On October 1, 2012, Plaintiff defaulted on the Note by not making the required monthly payment due September 1, 2012.  F.A. Compl. ¶28. On December 5, 2012, the Deed of Trust that secured the Note was assigned to Wells Fargo Bank, N.A.  F.A. Compl. ¶29. Thereafter, Defendant Jeremy B. Wilkins executed a document appointing Defendant TSC as Substitute Trustee under the Deed of Trust. ¶30.

On February 5, 2013, TSC sent Plaintiff a letter concerning the default on her mortgage. F.A. Compl. ¶37; February 5, 2013 letter to Plaintiff attached as **Exhibit 1**.[2]  Plaintiff responded to the letter in two ways.  First, on February 7, 2013, Plaintiff called the offices of Defendant Brock & Scott regarding her loan.  F.A. Compl. ¶39. Plaintiff alleges that during this call she spoke with Mr. Gallagher.  F.A. Compl. ¶¶40-41. Second, on February 19 and 20, 2013, Plaintiff

---

[2] When a document is specifically referred to in the Complaint, a party may attach that document and the court may consider that document as part of a motion to dismiss pursuant to Rule 12(b)(6). *See Darcangelo v. Verizon Commc'ns., Inc.*, 292 F.3d 181, 195 (4th Cir. 2002) ("[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'"); *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (citations omitted).

faxed and mailed to "Defendant(s)" a request for a verification of her debt. F.A. Compl. ¶¶44-50.

**D.     The Contact Between Plaintiff And The Defendants After Her Verification Request**

*1.     Communication Before The Response to Plaintiff's Verification Request*

After sending her request for a verification of debt, Plaintiff alleges that Brock & Scott, TSC, and some of the individual Defendants continued with the foreclosure and that she was contacted by employees of Brock & Scott and TSC about the debt. F.A. Compl. ¶¶52-75. On February 25, 2013, the Clerk of Court of Onslow County file-stamped documents entitled '"Notice of Hearing" and "Notice of Foreclosure Sale" regarding the Property. F.A. Compl. ¶¶51-52. Both documents were signed by Defendant Matthew J. Herrle ("Herrle") on February 12, 2013, a week before Plaintiff sent the verification to Brock & Scott. **Exhibit 2,** attached (file-stamped Notice of Hearing and Notice of Foreclosure Sale). Also on February 26, 2013, Defendant Melissa Stone emailed Plaintiff a reinstatement quote. F.A. Compl. ¶53.

*2.     Communication After The Response to Plaintiff's Verification Request*

On or about March 1, 2013, Defendant Trustee Services of Carolina, LLC ("TSC") through its law firm, Brock & Scott, PLLC ("Brock & Scott") sent Plaintiff a verification of her debt under the FDCPA. **Exhibit 3**, attached (verification documents). Despite the fact that the FDCPA verification was in route to her, on March 2, 2013, Plaintiff alleges that she sent certified mail to the Defendants advising them that they were in violation of the FDCPA by not responding to her February 21, 2013 request for a validation of her debt. F.A. Compl. Exhibit C, ¶54.

Plaintiff then alleges that on March 4, 2013 Defendant Wendy Clawson sent her an email which included a second reinstatement quote and an invoice. F.A. Compl. ¶56. In that email,

Plaintiff admits that she was informed that TSC had responded to her FDCPA verification request. F.A. Compl. ¶58. On March 5, 2013, TSC sent Plaintiff a letter concerning the default on her mortgage. F.A. Compl. ¶¶65-66. The header of the letter indicated that it was from "Trustee Services of Carolina, LLC c/o Brock & Scott, PLLC." **Exhibit 4**, attached (March 5, 2013 letter to Plaintiff)**.**

On March 6, 2013, Plaintiff alleges that she sent B & S a second debt verification request.   F.A. Compl. Exhibit D, ¶60.  In the request, Plaintiff admits that she was in receipt of TSC's response to her first verification request.  F.A. Compl. Exhibit D. Plaintiff claims that the TSC's response was incomplete because it did not respond to an inquiry she made about the assignment of her debt. F.A. Compl. Exhibit D.  Plaintiff then proceeded in this request to unilaterally define "debt validation" under the FDCPA in the following manner.

> Please be advised that I am requesting a "validation**:" that is, competent evidence that I have some contractual obligation to pay you or to pay the alleged amount owed "via" your offices or agents. I have not received any competent evidence to validate who you are and how you can request the funds requested, nor how you have the legal contractual standing to place yourself within this alleged debt issue.**

F.A. Compl. Exhibit D (emphasis added).

On March 7, 2013, The Clerk of Court of Onslow County file-stamped a document entitled "Amended Notice of Hearing" that was signed by Defendant Herrle.  F.A. Compl. ¶62. On March 9 and 18, 2013, Plaintiff alleges that the "Defendant(s) sent an agent to post a 'Notice of Foreclosure' on the Plaintiff's property."  F.A. Compl. ¶¶63, 65.

**E.     The Allegations Against The Attorney Movants**

Plaintiff's sole cause of action against the Attorney Movants is a violation of 15 U.S.C. §1692g(b).  F.A. Compl. ¶¶91-150.  Furthermore, the only specific act Plaintiff alleges each

6

Attorney Movant committed was "failing to cease collection of the debt or alleged debt after a written letter of dispute had been mailed and received." F.A. Compl. ¶¶99, 114, 127, 138, 147.

The alleged facts in the Complaint and First Amended Complaint that support Plaintiff's ¶1692g(b) claim against each of the Attorney Movants are as follows:

1.    *James P. Bonner*

Plaintiff alleges that James P. Bonner is a Senior Partner at Brock & Scott. F.A. Compl. ¶ 15. She also alleges he has **"**direct or indirect possession of the power to direct or cause the direction of the management and policies of the law firm" because the firm's website states his "primary responsibility is directing the Foreclosure Division of the Firm." *Id.* Finally, she alleges that Mr. Bonner is listed as a Manager/Member of Brock & Scott on the North Carolina Secretary of State's website. F.A. Compl. ¶35. Plaintiff does not allege that she had any contact or communications with Mr. Bonner, or that he was actually involved in handling the foreclosure of the Property.

2.    *Jeremy B. Wilkins*

Plaintiff alleges that Jeremy B. Wilkins has "direct or indirect possession of the power to direct or cause the direction of the management and policies of the [Brock & Scott]" because the firm's website states he is the "Managing Attorney in [its] Foreclosure Division" and to be "responsible for general North Carolina foreclosure operations." F.A. Compl. ¶16. Plaintiff also alleges that Mr. Wilkins executed a Substitution of Trustee on a Deed of Trust on the Property on October 1, 2012. F.A. Compl. ¶30. Plaintiff does not allege that she had any contact or communications with Mr. Wilkins.

3.    *Thomas E. Brock*

The allegations against Thomas E. Brock are that he is a founding member of Brock & Scott and had "direct or indirect possession of the power to direct or cause the direction of the management and policies of the firm." F.A. Compl. ¶18. Plaintiff does not allege that she had any contact or communications with Mr. Brock, or that he was actually involved in handling the foreclosure of the Property.

4.    *Gregory A. Scott*

The allegations against Gregory A. Scott are that he is a founding member of Brock & Scott and had "direct or indirect possession of the power to direct or cause the direction of the management and policies of the firm." F.A. Compl. ¶19.  Plaintiff does not allege that she had any contact or communications with Mr. Scott, or that he was actually involved in handling the foreclosure of the Property.

5.    *Aaron B. Anderson*

The allegations against Aaron B. Anderson are that he has "direct or indirect possession of the power to direct or cause the direction of the management and policies of [TSC]" and Anderson is the registered agent for TSC**.** F.A. Compl. ¶17.  Plaintiff does not allege that she had any contact or communications with Mr. Anderson, or that he was actually involved in handling the foreclosure of the Property.

In the First Amended Complaint, Plaintiff makes the four additional broad statements to support Plaintiff's ¶1692g(b) claim against each of the Attorney Movants.  They are:

5.     *The Attorney Movants had "Supervisory Authority" at Brock & Scott or TSC*

Plaintiff alleged that each of the Attorney Movants had "supervisory authority within the professional limited liability company over the practice of collecting the subject alleged debt." F.A. Compl. ¶¶ 93, 109, 120, 130, 143.

6.     *The Attorney Movants had "Management Authority" at Brock & Scott or TSC*

Plaintiff also newly alleges in her First Amended Complaint that the Attorney Movants were "indirectly involved in the collection of this particular alleged debt, and possesses, by virtue of [their] position[s], [their] management authority, [their] oversight and [their] direction of others with Brock & Scott [or TSC]. . ." F.A. Compl. ¶¶ 94, 110, 121, 131, 144.

7.     *The Attorney Movants Supervised the "Practices and Procedures" at Brock & Scott or TSC.*

The third new allegation regarding the Attorney Movants "exercised supervisory authority over the entity Brock & Scott [or TSC] and w[ere] intimately involved with the practices and procedures of the entity, and possess[], by virtue of [their] position[s], [their] management authority, [their] oversight and [their] direction of others with Brock & Scott . . .. and that certain individuals acted through those policies and procedures." F.A. Compl. ¶¶ 95-96, 111-112, 122-123, 132-133, 145-146.

8.     *The Attorney Movants "Developed and Implemented" the Practices and Procedures at Brock & Scott and TSC.*

The final new allegation against the Attorney Movants was that "they developed and implemented, or assisted in the development and implementation of the particular collection practice(s) involved in this case that Plaintiff alleges is in violation of the FDCPA." ¶¶ 97, 113, 124, 134, 147.

9

## STANDARD OF REVIEW

The First Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) should be granted if it appears that the plaintiff cannot prove any set of facts in support of her claim entitling her to relief.   *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 696 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

## ARGUMENT

**A.    Plaintiff Fails To Allege Direct Involvement Of The Moving Defendants In Debt Collection After She Sent The Validation Demand**

To prevail on a FDCPA claim, a plaintiff must sufficiently allege that (1) she was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA.  *Johnson v. BAC Home Loans Servicing, LP*, 867

10

F.Supp.2d 766, 776 (E.D.N.C. 2011); *Dikun v. Streich,* 369 F.Supp.2d 781, 784–85 (E.D.Va. 2005) (*citing Fuller v. Becker & Poliakoff,* 192 F.Supp.2d 1361 (M.D.Fla.2002)).

The Fourth Circuit Court of Appeals has held that law firms and lawyers acting in connection with a foreclosure may qualify as "debt collectors" under the FDCPA. *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 375-377 (4th Cir. 2006) (holding law firm and an attorney at the firm were directly communicating with plaintiff, hence were "debt collectors" under the FDCPA). To qualify as a debt collector, however, plaintiff must allege some personal involvement of the defendant in the debt collection activity. *Derisme v. Hunt Leibert Jacobson, P .C.,* 880 F.Supp.2d 339, 373 (D.Conn. 2012). In *Johnson*, *supra,* the court found that because the Appointment of Substitute Trustee form was signed by defendant Hooker this "suggest[ed] personal involvement by Defendant Hooker so as to raise a plausible inference that she was sufficiently involved in the foreclosure proceedings to constitute a "debt collector" under the FDCPA." *Johnson*, 867 F.Supp.2d 766, 778-779; *See also Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (holding that an individual employee was a "debt collector" based on his specific involvement in debt collection activities); *Albanese v. Portnoff Law Assocs.,* 301 F.Supp.2d 389 (E.D.Pa. 2004) (holding individual employees who "took affirmative actions" in a debt collection activity were subject to individual liability under the FDCPA); *See also Stewart v. Bierman*, 859 F. Supp.2d, 754, 761-762 (D.Md. 2012) (plaintiff sufficiently pled that defendant attorneys were debt collectors because complaint alleged they were appointed as agents by the note holder to collect plaintiff's debts).

In this instant action, Plaintiff fails to allege the Moving Defendants either had any direct contact with her in writing or verbally (except for one Defendant who had contact with her

*before* the alleged violation of §1692g(b)), and/or had any personal involvement in the foreclosure proceeding.

In an attempt to cure this defect in her FDCPA claim against the Attorney Movants, Plaintiff makes the same four additional allegations against each of them. *See* Statement of Facts, Section E *infra*.

The new allegations in Plaintiff's First Amended Complaint do not make any allegations of direct contact with her by the Moving Defendants in collecting the debt at issue in this case. Instead, Plaintiff's new allegations are built on the supposition, without any substantive support, that the Attorney Movants must have somehow been involved in the collection of her debt by virtue of their respective positions with Brock & Scott and TSC. Furthermore, these allegations are vague in that they do not assert who these Defendants supervised and managed and when the alleged improper management occurred. Plaintiff also does not name any specific policy and procedure that the Attorney Movants developed or implemented that eventually led to the violations she alleged. These allegations are a prime example of or "naked assertion[s]" devoid of "further factual enhancement" that are subject to dismissal under 12(b)(6). See *Iqbal,* 556 U.S. at 696 (2009) (quoting *Twombly,* 550 U.S. at 555, 557 (2007).

The key to understanding why the additional allegations added by Plaintiff are still short of what is needed to survive a motion to dismiss is that the allegations are merely asserting that it is possible the Attorney Movants are liable under the FDCPA instead it being plausible that they are. The standard of pleading announced by *Iqbal* and *Twombly*, *supra*, demands this of the Plaintiff. *See e.q. U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,* 745 F.3d 131, 140 (4th Cir. 2014) *see also Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (explaining that "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops

short of the line between possibility and plausibility of entitlement to relief"). While Plaintiff's additional allegations may be consistent with the notion of individual liability for a violation of the FDCPA, she adds no specific facts that show that individual liability applies to these Attorney Movants in particular in this case.

**B.      Plaintiff Fails To Allege Facts That Would Impute Collective Liability For The Actions Of Non-Moving Defendants Onto Moving Defendants.**

Absent an allegation of direct or personal involvement in the collection activities, such as in *Wilson*, *Johnson* or *Stewart*, Plaintiff might reach Moving Defendants under a "veil-piercing" standard.  However, she has failed to plead any facts that would support such a position.

Two cases decided by the District Court from the Western District of Virginia suggest the Fourth Circuit may adopt the Seventh Circuit's veil-piercing standard to assess individual liability to corporate officers under §1692. *See e.g. Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1059 (7th Cir.2000) (adopting veil-piercing standard for establishing individual liability against debt collector corporations shareholders and officers under §1692).  In *West v. Costen*, 558 F. Supp. 564 (W.D. Va. 1983), plaintiff sued a corporation and several corporate officers under the FDCPA.  Plaintiff attempted to assert liability to one of the officers (Costen) with whom she failed to allege any personal contact by seeking to pierce the corporate veil.  *Id*. at 585.  The Court went on to reason that:

> [T]here is no allegation or evidence that [Costen] personally violated any provisions of the Act and, unlike MSF, he cannot be held vicariously liable for the statutory violations of MSF's collection agents. An officer of a corporation cannot be held personally liable for the wrongful conduct of the corporation's employees absent personal involvement with the conduct.

*Id. at 585.*

The court then applied the Fourth Circuit standard for piercing the corporate veil, under *DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.,* 540 F.2d 681 (4th Cir.1976), to determine whether Costen was liable to plaintiff to the same extent as the corporation: a) inadequacy of corporate capitalization for the venture undertaken, b) failure to observe corporate formalities, c) non-payment of dividends, d) insolvency of the debtor corporation at the relevant time, e) siphoning of funds of the corporation by the dominant shareholder, f) non-functioning of other officers or directors, g) absence of corporate records, and g) the fact that the corporation is a mere facade for the dominant shareholder. *Id.* at 586-587.

In 2009, the same court again applied the veil-piercing standard described in *West* reasoning that "[o]fficers of corporations are not liable under the FDCPA solely by virtue of the offices that they hold and stockholders are not liable solely by virtue of the fact that they are stockholders." *Thomas v. Finneran*, 2009 WL 2588348 at *1 (W.D. Va. Aug. 20, 2009) (attached as **Exhibit 5**)(*citing Pettit* 211 F.3d at 1059).

> [C]ritically lacking from Thomas's complaint is any specific factual support for the allegation that the corporation's officers or stockholders themselves engaged in activities that would qualify them as debt collectors under the FDCPA. In short, her factual allegations are not enough to raise her claim to relief "above the speculative level" or to state a claim against the individual defendants "that is plausible on its face."
>
> *Thomas,* 2009 WL 2588348 *at *1.*

In the case at bar, Plaintiff has alleged only that individual Attorney Movants are owners or officers of the law firm of Brock & Scott or TSC. Compl. ¶¶ 7-11, 15-19, 30, 35. She has not alleged that these same individuals participated in the alleged FDCPA violations. She has not alleged any of the factors described above that would support application of a veil-piercing standard. In short, she has failed to connect Moving Defendants to the alleged violations of §1692g(b), and the First Amended Complaint simply provides no basis in fact to support the

14

allegations that Moving Defendants are debt collectors or that they engaged in any act or omission prohibited by the FDCPA.

In the initial brief, the Attorney Movants argued that absent an allegation of direct or personal involvement in the collection activities, Plaintiff had to allege that the conduct of the Attorney Defendant has to pierce the corporate veil under Fourth Circuit law to assess individual liability against them under the FDCPA. *Id.*

In Plaintiff's response to the Attorney Movants Motion to Dismiss (Dkt. Entry 25) (hereinafter "Response Brief"), Plaintiff argues that the Court should not give heed to the two cases that Attorney Movants cite from District Court in the Fourth Circuit in favor of the veil piercing standard because one case was too old to be persuasive and the other case should not be relied upon for various reasons. Response Brief, at pp. 12-13. Furthermore, Plaintiff cites cases from other circuits in support of the proposition that the veil-piercing standard should not apply. *Id.*, pp-8-19.

Despite Plaintiff's misgivings about the cases the Attorney Movants cite from Fourth Circuit District Courts, these two cases are the only cases from the Circuit that make holdings on the issue of when an individual can be held liable under the FDCPA when he/she did not have direct verbal or written contact with the aggrieved Plaintiff.

While there are courts in other Circuits that take the approach that individual officers and employees of collection agencies may be liable for § 1692 violations in some circumstances, *see e.g. Brumbelow v. Law Offices of Bennett & Deloney, P.C.,* 372 F.Supp.2d 615, 618 n.3 (D.Utah 2005) (citing cases); however, for these courts to find an individual liable under the § 1692(g)b of the FDCPA, "the individual must have been personally involved in the unlawful collection effort." *Derisme v. Hunt Leibert Jacobson, P .C.,* 880 F.Supp.2d 339, 373 (D.Conn.2012).

A prime example of how courts in other circuits require personal involvement is the recently decided case of *Rodriquez v. Luchey & Mitchell Recovery Solutions, LLC et. al.*, 2013 WL 2378557, C.A. No. 12-cv-03035 (D.Colo. decided May 30, 2013) attached as **Exhibit 6**. In that case, Marina Rodriquez filed a lawsuit against Luchey & Mitchell Recovery Solutions, LLC ("Luchey"), a collection agency and Terette Haugabook, a member of Luchey. *Id.*, 2013 WL 2378557 at *1. In her lawsuit, Rodriquez alleged that both Luchey and Haugabook violated the FDCPA by virtue of a phone call made to her on October 5, 2012. Id. On March 14, 2013, Rodriquez moved for an entry of default against Luchey and Haugabook. *Id.*, 2013 WL 2378557 at *1-2. On March 15, 2013, the Clerk of Court entered default. *Id.*, 2013 WL 2378557 at *1. On May 22, 2013, the Court entered default judgment against Luchey but denied the entry of default against Haugabook. *Id.* The reason for the Court's denial of default against Haugabook was that Rodriquez complaint failed to allege "that Ms. Haugabook personally participated in the collection activities surrounding the October 5, 2012 phone call, such as making the telephone call or directing one of her subordinates to do so." *Id.* On May 23, 2013, the Court ordered Rodriquez to show cause why her claims against Ms. Haugabook should not be dismissed for failure to state a claim. *Id.* In response, Rodriquez pointed to the following allegations in her lawsuit:

- Defendant Terette Haugabook ("Ms. Haugabook") is an individual who is a member of Luchey, and at all relevant times, was engaged by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

- Ms. Haugabook was regularly engaged, directly or indirectly, in the collection of Plaintiff's debt.

- Ms. Haugabook was personally involved in the collection of Plaintiff's debt.

16

- Ms. Haugabook was materially involved in the collection of Plaintiff's debt.

- Ms. Haugabook materially participated in Luchey's debt collection activities.

- Ms. Haugabook was involved in the day-to-day operations of Luchey's debt collection business.

*Id.* The Court rejected Plaintiff's arguments that these allegations where specific enough to bring for individually liability against Haugabook under the FDCPA. *Id.*, 2013 WL 2378557 at *2. The Court specifically denied that the allegation that Haugabook participated in the "day-to-day operations" and "exercised control over Luchey's affairs" contained enough factual enhancement to bring a claim because Rodriquez did not state "what those day-to-day operations are and how they specifically relate to the October 5, 2012 phone call." *Id.*

In this case, Plaintiff is bringing the same kind of conclusory allegations in relation to the Attorney Movants supervisory and management duties in relation to her alleged FDCPA claim. She does not plead who the Attorney Movants supervised/managed, when they supervised the alleged violation, and how the alleged faulty management/supervision occurred. *Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir.2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated"). The same can be said of Plaintiff's allegations of the Attorney Movants "development and implementation" of policies/procedures in the First Amended Complaint. The Plaintiff does not make any allegation of any specific policy/procedure that was violated, what specific role that each Attorney Defendant had in the development and implementation of the policy/procedure, and how specifically the policy/procedure violated the

17

FDCPA.  As in *Rodriquez*, this Court should dismiss Plaintiff's First Amended Complaint against the Attorney Movants.

**C.      Defendants Gallagher Must Be Dismissed**

Defendant Stephen Gallagher must be dismissed for two reasons.  Plaintiff does not allege that Gallagher contacted her after she made a written verification under § 1692g(b) and Plaintiff has failed to properly serve him.

*1.      Gallagher Had No Contact With Plaintiff After February 7, 2013*

The only contact that Plaintiff alleged she had with Gallagher was on February 7, 2013. F.A. Compl. ¶¶39-41.  Plaintiff's Complaint clearly alleges that all of the violations of §1692g(b) committed by any Defendant occurred after February 19, 2013.  F.A. Compl. ¶¶51-75, 91-165. Plaintiff has not alleged that any specific document was sent to her by Gallagher after February 19, 2013 or that Gallagher verbally communicated with her after that date.  Her broad and general allegations that "Defendant(s)" communicated with her after February 19, 2013 is not enough to sustain a claim against Gallagher individually.  Plaintiff's allegations against him do not make a plausible claim for a violation of §1692g(b) and it would be rampant speculation that he did based on the allegations in her Complaint.

*2.      Gallagher Has Not Been Properly Served*

Fed. R. Civ. P. 12(b)(5) challenges the mode of delivery or the lack of delivery of the summons and complaint.  *Id.*; *See Plant Genetic Systems, N.V. v. Ciba Seeds,* 933 F. Supp. 519, 526 (M.D.N.C.1996).   Pursuant to Fed. R. Civ. P. 4(e) an individual may be served by 1) personal service on the defendant, 2) leaving a copy of the summons and complaint at the individual's dwelling or usual place or abode, 3) delivering a copy of the an agent authorized by appointment by law to receive service or process for the individual, or 4) otherwise following

18

state law for serving a summons in the state where the individual defendant lives.  Fed. R. Civ. P. 4(e).

In this case, on March 19, 2014, Plaintiff sent a summons and a copy of the Complaint by priority mail to "Stephen Gallagher, c/o Brock & Scott PLLC, 5431 Oleander Drive, Wilmington, NC 28403".  *See Proofs of Service as to Brock & Scott PLLC, Trustee Services of Carolina LLC, Matthew J. Herrle, Jeremy B. Wilkins, Thomas E. Brock, Aaron B. Anderson, Steven Gallagher, Melissa Stone and James P. Bonner* (Dkt. Entry 12), p. 12.   At the time of service, Gallagher was not an employee of Brock & Scott.  *See* Declaration of Kimberly Rogosky attached as **Exhibit 7**.

In the case, Plaintiff did not attempt service via state law.  All of the methods prescribed by N.C. R. Civ. P. Rule 4(j)(1) require that the summons and complaint actually be delivered to the defendant personally or by registered or certified mail.  Gallagher cannot be served at a work place where is no longer employed.  This attempted service by Plaintiff on Gallagher is invalid and the Complaint against him must be dismissed.

**D.     Defendants Clawson Must Be Dismissed**

Defendant Clawson moves to dismiss Plaintiff's First Amended Complaint because the allegations in that pleading shows that, as a matter of law, her only communication with Plaintiff occurred *after* Brock & Scott and TSC responded to Plaintiff's verification request under the FDCPA.

In the initial Complaint, Plaintiff implies, if not explicitly states, that she never received a FDCPA verification or validation of her debt from Defendants. Compl. (Dkt. Entry 1) ¶¶54-58. However, in her First Amended Complaint, Plaintiff admits that she received a response to her request for an FDCPA verification request.   F.A. Compl. Exhibit D, ¶¶58-60.   On or about

March 1, 2013, Brock & Scott, on behalf of TSC, mailed a response to Plaintiff's FDCPA verification request. *See* attached **Exhibit 3**. On March 6, 2013, Plaintiff objected to the response on the basis that it did not validate the debt at issue according to her own unilateral definition of the term "validation". F.A. Compl, Exhibit D.

Under the law of the Fourth Circuit Court of Appeals and District Courts, validation of a debt under the FDCPA "involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999); *see also Jackson v. Convergent Outsourcing, Inc.,* C.A. RDB-13-1755, 2014 WL 722116 (D. Md. Decided Feb. 25, 2014) attached **Exhibit 8**.

In the verification that Brock & Scott mailed to Plaintiff on behalf of TSC, the law firm confirmed in writing the amount of Plaintiff's mortgage that was in arrears, the remaining balance on the mortgage, the identity of the holder of the Note, and provided a copy of the Note and Deed of Trust signed by the Plaintiff which identified Home Finance of America as the original creditor of the debt. *See* attached **Exhibit 3**. Under the standard announced in *Chaudhry*, the Plaintiff was provided with validation or verification of her debt. Nowhere in the statutory language of the FDCPA or any case law interpreting the FDCPA does a borrower, such as Plaintiff, have the right to interpret the term "validation of debt" in the manner that Plaintiff has in this case. Her unilateral definition of what constitutes a validation of debt under the FDCPA does not give her a cause of action. The Moving Defendants request, that this Court as a matter of law that the FDCPA verification provided by Defendants Brock & Scott on behalf of TSC is valid and was mailed to the Plaintiff on March 1, 2013.

Plaintiff's only allegations against Wendi Clawson was that Clawson had an email exchange with her on March 4, 2013 about the reinstatement of her mortgage and the transmittal

of the verification/validation response. F.A. Compl. ¶¶56, 58. Because this communication with Plaintiff was *after* the verification/validation request was mailed to Plaintiff, her claim against Clawson for violations of §1692g(b) must be dismissed as a matter of law.

## CONCLUSION

Based on the foregoing, James P. Bonner, Jeremy B. Wilkins, Thomas E. Brock, Gregory A. Scott, Aaron B. Anderson, Stephen Gallagher and Wendi Clawson, by counsel, request the Court to enter an order granting their motions to dismiss; dismissing Plaintiff's First Amended Complaint with prejudice; awarding these Defendants the costs incurred in this action, including reasonable attorney's fees; and granting such other relief as the Court deems just and proper.

Respectfully submitted this 20th of May, 2014

**BROCK & SCOTT, PLLC**

s/Franklin L. Greene
Franklin Greene, NC Bar #37896
5121 Parkway Plaza Blvd.
Charlotte, NC 28217
704-643-0290 (Phone)
704-553-7225 (Fax)
Franklin.Greene@BrockandScott.com
Attorneys for Defendants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:14-cv-00028-D

MARIAN SNOW,

        Plaintiff,

  vs.

BROCK & SCOTT PLLC
TRUSTEE SERVICES OF CAROLINA LLC
JAMES P. BONNER
MATTHEW J. HERRLE
JEREMY B. WILKINS
THOMAS E. BROCK
GREGORY A. SCOTT
AARON B ANDERSON
STEVEN GALLAGHER
MELISSA STONE
WENDI CLAWSON
          Defendants.

**CERTIFICATE OF SERVICE**

     I hereby certify that on May 20th, 2014 a copy of the foregoing pleading, with any and all attachments, was filed electronically with the clerk of court via ECF and served via First-Class Mail, postage prepaid, addressed to:

Marian Snow
103 Nostalgia Lane
Zebulon, NC 27597

Marian Snow
4472 Island Drive
North Topsail Beach, NC 28460
Msnow20@gmail.com

Chief Judge Dever
Attn: Case Manager
U.S. District Court
Eastern District of North Carolina
310 New Bern Avenue
Raleigh, NC 27601

                           BROCK & SCOTT, PLLC
            BY:     /s/ Franklin Greene_____
                           Franklin Greene